# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) LINDA G. SCHUMAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-CV-00313-JED-FHM |
| 1) U.S. DEPARTMENT OF ENERGY, Dr. Ernest Moniz in his official capacity as Secretary of Energy; | ) |
| 2) SOUTHWESTERN POWER ADMINISTRATION, an agency of the United States, Scott Carpenter, in his official capacity as Administrator; and | ) JURY TRIAL DEMANDED |
| 3) ELMER KEITH BLACKSTONE, in his official capacity as Director of Human Resources Management at Southwestern Power Administration, | ) |
| Defendants. | ) ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW, LINDA G. SCHUMAN,** Plaintiff, and for her causes of action against the U.S. Department of Energy, Southwestern Power Administration, and Elmer Keith Blackstone, in his official capacity as Director of Human Resources Management at Southwestern Power Administration, Defendants, alleges and states as follows:

### I.

### JURISDICTION AND VENUE

1. Plaintiff is an individual who resides in Tulsa County, State of Oklahoma.

2. At all material times, Defendant Southwestern Power Administration ("SWPA") was an agency of the United States of America within the U.S. Department of Energy ("DOE").

*See* 16 U.S.C. § 832 et seq.  SWPA is a governmental agency with the capacity to be sued. SWPA is an employer within the meaning of Title VII and the ADEA.  SWPA operates in, among other states, the State of Oklahoma.

3.     Scott Carpenter is the Administrator of SWPA.

4.     Defendant, Dr. Ernest Moniz, Secretary, U.S. Department of Energy, is a governmental agency with the capacity to be sued.  Defendant is an employer within the meaning of Title VII and the ADEA.

5.     Defendant, Elmer Keith Blackstone ("Blackstone") was the Director of Human Resources Management and Plaintiff's direct supervisor during the events that are the subject of this Complaint.  Blackstone is an individual who resides in Choctaw, Oklahoma County, State of Oklahoma.

6.     This is an action arising under the laws of the United States of America, in particular Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et seq. (hereinafter generally referred to as "Title VII") and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et.seq (hereinafter generally referred to as "ADEA").

7.     This action also arises under the Family Medical Leave Act, as amended, 5 U.S.C. §6381 et seq. (hereinafter generally referred to as "FMLA").

8.     This action also arises under the anti-retaliation provisions contained within Title VII (42 U.S.C. §2000e-3(a)), the ADEA (29 U.S.C. § 623(d)) and FMLA (5 U.S.C. §6385).

9.     This court has original and exclusive jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(4).

10. Venue is proper because all or a substantial part of the events giving rise to the claims occurred within the Northern District of Oklahoma. 28 U.S.C. §1391(b).

11. At all material times, SWPA was acting by and through its agency, the U.S. DOE, and had working for it employees who, at all material times, were working within the course and scope of their office and employment.

12. All acts attributed to SWPA and DOE as alleged below were performed by and through said persons.

13. Plaintiff has complied with all administrative prerequisites to this action under §2000e-5 of Title VII and §626(d) of the ADEA as follows:

    A. Plaintiff is a 63 year old female. She was a federal employee at all material times herein.

    B. Plaintiff's first contact with an EEO counselor at Department of Energy, Western Area Power Administration (WAPA) regarding the events complained of herein occurred on June 23, 2014.

    C. Plaintiff filed a formal EEO complaint on July 30, 2014 alleging age discrimination and retaliation (hereinafter First EEO Complaint).

    D. Plaintiff amended her First EEO Complaint on October 27, 2014, December 15, 2014, December 21, 2014, January 31, 2015, February 22, 2015 and May 3, 2015.

    E. Plaintiff filed a second formal EEO complaint on August 22, 2015 (hereinafter Second EEO Complaint), which was a continuation of the events set forth in her First EEO Complaint.

    F. Plaintiff amended her Second EEO Complaint on September 16, 2015 and on October 29, 2015, which added a claim of sex discrimination. Further, because the final amendment of the Second EEO Complaint contained allegations of wrongful termination, the entire Second EEO Complaint was thereafter treated as a "mixed case" complaint.

    G. Plaintiff promptly and diligently accommodated all agency requests for information and fully cooperated in the investigation of these claims.

3

H. The deadline for Plaintiff to receive a final agency decision was on or around April 11, 2016. However, Plaintiff has not yet received a final agency decision regarding her Second EEO Complaint.

I. This action is timely filed, as it has been filed following the expiration of 120 days from the last amendment to the second complaint, and before the final agency decision has been issued. 29 C.F.R. § 1614.310(g) 1992.

J. Further, Plaintiff has or will notify the EEOC office handling the appeal of Plaintiff's first claim that this case is pending, so that both claims may be heard once, before this Court, per 29 C.F.R. § 1614.409 2012.

## II.

## FACTUAL ALLEGATIONS

14. Plaintiff was born on January 21, 1953. Plaintiff is female.

15. During the time of the events set forth in this Complaint, Plaintiff was between 61 and 62 years old.

16. Plaintiff is a member of two protected classes based upon her gender and age.

17. Plaintiff began working for WAPA in February, 2007 at level GS-7 in the Human Resources Department. Her responsibilities included tasks in position classification, recruitment, staffing, and placement. Plaintiff holds a Masters degree in occupational and adult education with a minor in Human Resources development. She had prior training, along with private sector work experience, and over fifteen years of training/development experience that she brought to the table when she arrived at WAPA.

18. Plaintiff transferred to SWPA in September, 2008 and steadily moved up the ranks within SWPA, and by July 15, 2012, Plaintiff was a level GS-11 employee in the Human Resources Department.

19. Keith Blackstone ("Blackstone") became the director of Human Resources at SWPA on or about November 17, 2013.

4

20. From on or about November 17, 2013 until her retirement in October, 2016, Blackstone was Plaintiff's supervisor.

21. Prior to Blackstone becoming Plaintiff's supervisor, Plaintiff had received only positive employment reviews, and had never faced any type of disciplinary action.

22. Throughout the time that Blackstone was Plaintiff's supervisor, there were several occasions when Blackstone would forget an event or a simple fact, and he would blame it on "getting old." These comments were made in front of Plaintiff, and despite the fact that Plaintiff was almost twenty years Blackstone's senior.

23. In May, 2014, Blackstone allowed Plaintiff's Delegated Examining Unit (DEU) certification to lapse, despite Plaintiff's repeated requests to approve her free online recertification training. The loss of this certification meant Plaintiff could no longer work independently in staffing on vacancy announcements for the general public.

24. Also in May, 2014, Blackstone implemented a peer review process, which was applied more stringently to Plaintiff than to younger employees. Specifically, per another Human Resources Specialist, the younger employees' work was reviewed by one peer. If a mistake was found, the mistake was to be corrected before the action was processed. However, in the case of Schuman, her work was to be reviewed and signed off on by two of her peers. Any mistakes in her work were to be reported directly to Blackstone, even if the error was corrected before it was finalized or processed, defeating the purpose of a peer review process.

25. On or about June 18, 2014, Blackstone cancelled Plaintiff's Federal Erroneous Retirement Coverage Corrections Act (FERCCA) training, despite the fact that Plaintiff was in the middle of her first FERRCA case since taking over the retirement program responsibilities

during the summer of 2013. Other younger and male employees continued to be trained to do the work that they were assigned to do.

26.     Plaintiff's first contact with an EEO counselor at WAPA regarding the incidents that are the subject of this lawsuit occurred on June 23, 2014, complaining about these issues and about her failure to be promoted to level GS-12 in January, 2014.

27.     Just three days later, Blackstone gave Plaintiff a Letter of Caution. This letter of caution concerned a conversation between Plaintiff and a younger co-worker that was initiated by the younger co-worker. Upon information and belief, the younger co-worker did not receive a letter of caution.

28.     Blackstone assured Plaintiff that the Letter of Caution would not become a part of Plaintiff's electronic Official Personnel Folder ("eOPF").

29.     In June of 2014, Blackstone assigned eOPF scanning to Plaintiff for three hours per day during regular work hours, which adversely affected Plaintiff's ability to complete her higher-graded duties that would benefit Plaintiff in terms of professional development and advancement.

30.     Plaintiff was excluded from participating in the July, 2014 training regarding OWCP, despite the fact that Plaintiff was assigned OWCP backup responsibilities and had not yet received any formal training regarding these responsibilities.

31.     Blackstone failed to provide any mid-year performance appraisals contrary to DOE rules. In October, 2014, Blackstone unjustifiably gave Plaintiff a low performance rating, and included negative comments in the appraisal, contrary to prior assurances made by Blackstone, which were made a part of Plaintiff's eOPF.

32. Mr. Blackstone created Plaintiff's fiscal year 2015 performance plan with new elements and standards which are arbitrary, subjective and improperly weighted, without Blackstone having sufficient knowledge of Plaintiff's job responsibilities and without appropriate input from Plaintiff.

33. In December 2014, Blackstone required the Human Resources staff to track their time usage for eight weeks. Per Blackstone, SWPA was chosen to be a "guinea pig" as part of upcoming changes anticipated to be made in the Human Resources Service Delivery project. Blackstone told one of Plaintiff's co-workers that the timing and extent of this tracking was in response to an EEO complaint, which left Plaintiff open to resentment from her co-workers that (presumably) her complaint had led them to have extra work during the holiday season. Based upon information and belief, the time usage study was either not required by headquarters, was started much earlier than required by headquarters, and/or was conducted for a longer period of time than required by headquarters, in retaliation for Plaintiff filing an EEOC complaint.

34. A GS-12 Human Resources vacancy announcement, posted on January 29, 2015, was tailored specifically by Blackstone to favor a younger, recently hired male employee. It appeared that the younger recently hired male employee had been preselected to fill the position even before the vacancy was announced, contrary to DOE rules. Plaintiff was qualified to be promoted to GS-12 level based upon her education, years of experience in the private sector, and years of experience working for WAPA and SWPA. Despite not being as well qualified for the position, and certainly not having the experience level of Plaintiff, that younger employee ultimately received the promotion to GS-12.

35. In February, 2015, Blackstone issued Plaintiff a Notice of Reprimand for failure to follow supervisory instructions related to Plaintiff's alleged failure to scan documents for four

7

hours per day, despite the fact that Blackstone never instructed Plaintiff to increase the amount of time scanning documents from three to four hours a day. Following that meeting, Plaintiff was forced to scan documents for four hours a day, further restricting Plaintiff's ability to perform her duties that would actually offer career advancement. The Notice of Reprimand further was issued allegedly due to Plaintiff's failure to turn her time study information in on time on two occasions. Based upon information and belief, at least two other Human Resources specialists were late or forgot to turn in their time studies, however neither received a Notice of Reprimand.

36. On or about February 26, 2015, Plaintiff applied for three positions at the Oak Ridge Shared Service Center: benefits, training and staffing/recruitment.

37. On or about March 27, 2015, Blackstone told Plaintiff that he called headquarters shortly after learning that Plaintiff was applying for positions at Oak Ridge Shared Service Center, and talked to two people about her applications. Blackstone took those actions to undermine Plaintiff's chances of being selected for these positions.

38. To Plaintiff's knowledge, she was never considered for the training and staffing/recruitment positions, despite being qualified for both positions. Plaintiff was apparently considered for the benefits position, however the position went to a younger male employee, even though he was not as qualified as Plaintiff in this area in terms of education, experience in the private sector, and experience working at WAPA/SWPA.

39. On or about May 20, 2015, Blackstone informed Plaintiff about a voluntary separation incentive payment option. To Plaintiff's knowledge, Blackstone did not inform younger employees of the same option, despite the fact that they could also be eligible for such a program.

40. On or about July 10, 2015, Plaintiff spoke to an EEO counselor regarding additional discriminatory actions on the part of Blackstone. Blackstone was interviewed multiple times regarding this process.

41. Shortly after Blackstone spoke to an EEO counselor regarding Plaintiff's latest claims on or about July 31, 2015, Blackstone repeatedly assigned Plaintiff work with unreasonably short deadlines that were arbitrary in nature and were designed to make Plaintiff fail. Such assignments included, but were not limited to: reassigned all resignations to Plaintiff; complete standard operating procedures for resignations, retirements, and removal for cause; complete a file plan within two (2) days, and reassignment of all current and new Office of Workers' Compensation Programs to Plaintiff. Such assignments were made for purposes of harassing Plaintiff, both because of her sex and her age and/or in retaliation for Plaintiff making EEO complaints against Blackstone.

42. Further, during this same time, Blackstone criticized Plaintiff on several occasions in a loud and demeaning tone that was easily heard by Plaintiff's co-workers. The complaints were unfounded or were critiques of Plaintiff's work habits: work habits that Blackstone and other younger staff regularly employed.

43. On August 24, 2015, Blackstone was notified that the SWPA Voluntary Separation Incentive Payment ("VSIP") authority had been approved.

44. During the week of August 24, 2015, Blackstone told Plaintiff that it would be better to retire while you can and take what you can get, rather than staying around.

45. Plaintiff was placed on FMLA leave by her family doctor on or about August 28, 2015 for three weeks, for high blood pressure due to job-related stress and anxiety.

46. Blackstone was aware Plaintiff was placed on FMLA leave, and the work-related medical reasons for that leave.

47. On or about September 17, 2015, the FMLA leave was extended by Plaintiff's family doctor for a period of an additional two weeks.

48. On or about September 17, 2015, Plaintiff notified Blackstone of the extension of her FMLA leave via voice message.

49. The day after Plaintiff informed Blackstone of the extension of her FMLA leave, Blackstone sent Plaintiff a Memorandum regarding Notice of Proposed Seven (7) Day Suspension ("Memo Regarding Proposed Suspension").

50. Plaintiff received the Memo Regarding Proposed Suspension on or about September 21, 2015. Per the Memo Regarding Proposed Suspension, she had only seven (7) days to respond. Plaintiff was still to be on FMLA leave when the response was due.

51. Plaintiff was unable to respond substantively to the Memo Regarding Proposed Suspension. Plaintiff did not have access to the information necessary to fully respond while she was on leave, because Blackstone had blocked her access to Citrix and therefore, she could not remotely access the system to obtain information to respond.

52. Plaintiff was further unable to respond because Plaintiff was supposed to contact Kathy Monson ("Monson") if she wanted to review the "evidence" allegedly supporting the Memo Regarding Proposed Suspension. She could not do so within the time provided because Monson was on leave until September 29, 2015 (after the response was due).

53.     Plaintiff's inability to access the system using Citrix also resulted in Plaintiff's inability to enter her time and attendance, and to check her remaining leave balance while she was on FMLA leave.

54.     Plaintiff (while on leave) requested and was granted an extension until October 13, 2015 to respond to the Memo Regarding Proposed Suspension.

55.     On September 24, 2015 (while still on FMLA leave, and while the Memo Regarding Proposed Suspension was still outstanding), Blackstone forwarded Plaintiff an email regarding the offered VSIP.

56.     The VSIP targeted only two positions, both of which were held by women over the age of 60 years old.

57.     Because Plaintiff feared additional retaliation, and because Plaintiff's health was already suffering due to the continued discrimination, harassment and retaliation against Plaintiff as described herein, Plaintiff applied for the VSIP and retired early.  Blackstone used threats, intimidation and harassment to force Plaintiff to apply for the VSIP and retire, just five days after threatening to suspend Plaintiff.

58.     Ultimately, Blackstone granted Plaintiff a further extension until October 19, 2015 to respond to the Memo Regarding Proposed Suspension, and told Plaintiff that she would not have to respond to it because she was taking the VSIP and retiring early.  Plaintiff did respond to the Memo Regarding Proposed Suspension, as it was completely without factual basis.

59.     Upon information and belief, Plaintiff's position (or equivalent) is now held by a younger (under 40 years of age) and less qualified male employee, contrary to the current policy

of the DOE and despite the fact that DOE is in the process of downsizing the number of Human Resources positions agency wide.

60. Upon information and belief, the younger (under 40 years of age) and less qualified male employee has required extensive training to be able to perform the work that Plaintiff had been doing in that position. Further, upon information and belief, the younger (under 40 years of age) and less qualified male employee has received training that is comparable to or even more extensive than the training that Plaintiff was denied while under Blackstone's supervision.

**Count I--Age Discrimination (29 U.S.C. §§621 et seq.)**

Plaintiff realleges Paragraphs 1-60.

61. As a woman over the age of 40, Plaintiff was a member of a protected group.

62. Plaintiff was qualified for the positions applied for at Oak Ridge and to be promoted to level GS-12, based upon her education, her training, her private sector Human Resources experience, and her Human Resources experience at WAPA and SWPA. Plaintiff also was eligible and qualified to attend all of the training that she was denied while under Blackstone's supervision.

63. Plaintiff was discriminated against due to her age by being denied training and/or being offered less training and being forced to perform menial work (hours each day scanning documents), all of which directly harmed Plaintiff's ability to advance professionally; by Blackstone creating 2015 Performance Plan Elements and Standards applicable to Plaintiff that were arbitrary, subjective, and improperly weighted; by not being promoted to GS-12 in January, 2015; by failing to receive a position at Oak Ridge due to discriminatory interference; and by being forced into retiring early.

64. Plaintiff was not promoted to level GS-12, while a younger, less qualified male who had fewer years of experience was promoted over Plaintiff from the Human Resources department to level GS-12. Plaintiff did not receive training required to continue to progress as she had done up the Human Resources ladder, and she was forced to do menial work far below her pay grade, while younger male employees in the Human Resources department were receiving training, and were not spending half of their days performing work (scanning documents) that would offer no professional development opportunities. Plaintiff was not considered and/or did not receive the applied for positions at Oak Ridge, as a result of Blackstone's intervention. Such positions went to less qualified younger individuals. Ultimately, Plaintiff was forced into early retirement by Defendants due to threats made to her. Upon information and belief, Plaintiff's position (or equivalent) is now held by a younger (under 40 years of age) and less qualified male employee.

65. Plaintiff was deliberately discriminated against because of her age. By engaging in this conduct, Defendants violated Plaintiff's rights under the ADEA.

66. Plaintiff further faced a hostile work environment due to her age as a result of the following: various comments made by Blackstone related to her age that were not made to other, younger employees, including that her life would be easier and she could avoid stress if she would only retire; continuous derogatory comments made by Blackstone regarding the forgetfulness of old people; by receiving less training/denied training; being subjected to discriminatory work standards that were developed by Blackstone without sufficient input from Plaintiff or knowledge regarding Plaintiff's role in the Human Resources department; being assigned menial tasks that took up to half of a work day that would directly negatively impact her ability to grow professionally; by receiving a Notice of Reprimand claiming that Plaintiff

13

failed to perform such menial tasks (scanning documents) for four hours a day, despite the fact that she was only told to perform such tasks for three hours a day; and by enduring Blackstone yelling at her in a demeaning way within the hearing of her co-workers.

67. Plaintiff was deliberately harassed because of her age. By engaging in this conduct, Defendants violated Plaintiff's rights under the ADEA.

68. Plaintiff has suffered significant damages as a direct result of Defendants' disparate treatment and harassment of her, including but not limited to: lost salary, lost contributions and annuity growth in the Federal Employees Retirement System Annuity (FERS), costs associated with taking early Social Security, lost Thrift Savings Plan (TSP) contributions from October 2015, and costs associated with annual and sick leave used due to work-related medical issues.

69. By taking the actions as described herein against Plaintiff, Blackstone acted with malice or with reckless disregard for Plaintiff's rights, causing Plaintiff to suffer significant injuries, not the least of which having to retire from a federal job early. Defendants DOE and SWPA are liable for the actions of Blackstone because he was the Human Resources manager for SWPA and was acting within the scope of his employment. Plaintiff is therefore entitled to recover liquidated damages from Defendants.

**Count II--Gender Discrimination (42 U.S.C. §§2000e et seq.)**

Plaintiff realleges Paragraphs 1-69.

70. As a woman, Plaintiff was a member of a protected group.

71. Plaintiff was discriminated against due to her gender by being offered less training and being forced to perform menial work, both of which directly harmed Plaintiff's ability to advance professionally; by Blackstone creating 2015 Performance Plan Elements and

14

Standards applicable to Plaintiff that were arbitrary, subjective, and improperly weighted, by not being promoted to GS-12 in January, 2015; by failing to receive a position at Oak Ridge due to discriminatory interference; and by being forced into retiring early.

72.     Plaintiff was not promoted to level GS-12, while a younger, less qualified male who had fewer years of experience was promoted over Plaintiff from the Human Resources department to level GS-12.  Based upon the stated qualifications for the promotion, it appears that the younger male employee was pre-selected for the promotion, contrary to agency rules. Plaintiff did not receive training required, and was forced to do menial work far below her pay grade, while younger male employees in the Human Resources department were receiving training, and were not spending half of their days performing work (scanning documents) that would offer no professional development opportunities.  Plaintiff was not considered and/or did not receive the applied for positions at Oak Ridge, as a result of Blackstone's discriminatory intervention.  Such positions went to less qualified younger male individuals.  Ultimately, Plaintiff was forced into early retirement against her wishes, due to the incredible stress caused by Blackstone's actions, which resulted in the worsening of her health problems.  Upon information and belief, Plaintiff's position (or equivalent) is now held by a less qualified male employee.

73.     Plaintiff was deliberately discriminated against because of her gender.  By engaging in this conduct, Defendants violated Plaintiff's rights under Title VII.

74.     Plaintiff has suffered significant damages as a direct result of Defendants' disparate treatment of her, including but not limited to: lost salary, lost contributions and annuity growth in the Federal Employees Retirement System Annuity (FERS), costs associated with taking early Social Security,  lost Thrift Savings Plan (TSP) contributions from October 2015,

costs associated with annual and sick leave used due to work-related medical issues, and pain and suffering caused by Blackstone's treatment of her, which resulted in a decline in Plaintiff's health.

75. By taking the actions as described herein against Plaintiff, Blackstone acted with malice or with reckless disregard for Plaintiff's rights under Title VII, causing Plaintiff to suffer significant injuries, not the least of which having to retire from a federal job early. Defendants DOE and SWPA are liable for the actions of Blackstone because he was the Human Resources manager for SWPA and was acting within the scope of his employment. Plaintiff is therefore entitled to recover punitive damages from Defendants.

## Count III--Family Medical Leave Act (5 U.S.C. §§6381 et seq.)

Plaintiff realleges Paragraphs 1-75.

76. Plaintiff's treating physician put Plaintiff on medical leave as a result of the stress she experienced due to all of the actions described herein by Blackstone. While on leave to tend to health issues related to the discrimination, harassment, retaliation and stress, Blackstone sent to Plaintiff at her home a Memo Regarding Proposed Suspension, which she was to respond to also while still on leave. Plaintiff was unable to substantively respond within the deadline given. Plaintiff was therefore forced to begin to respond to the Memo Regarding Proposed Suspension while at the same time seek an extension to respond to the same. The purpose of the leave was to escape the workplace stress inflicted upon her by Blackstone, yet even while on leave, Blackstone continued to harass her by forcing her to respond to baseless claims. Defendants unlawfully interfered with and/or restrained Plaintiff's right to take medical leave under FMLA by: 1) including as a basis for serious disciplinary action that Plaintiff missed an alleged

deadline that fell during a time that Plaintiff was on FMLA leave, and 2) requiring that Plaintiff work while on leave, or face an unsupported unpaid Suspension.

77. Defendants unlawfully coerced, intimidated or threatened Plaintiff while on FMLA leave by threatening reprisal against Plaintiff, specifically by threatening to suspend Plaintiff when she was on FMLA leave. Such proposed suspension was without foundation, and in fact was based in part upon an alleged missed deadline that also occurred while Plaintiff was on leave. By engaging in this conduct, Defendants violated Plaintiff's rights under FMLA.

78. Plaintiff has suffered damages as a result of Defendants' actions.

**Count IV--Retaliation (42 U.S.C. §2000e-3(a); 29 U.S.C. § 623(d); 5 U.S.C. §6385)**

Plaintiff realleges Paragraphs 1-78.

79. Plaintiff participated in EEO counseling beginning on or around June 23, 2014.

80. Plaintiff additionally filed EEO complaints based upon discrimination she suffered on account of her age and gender.

81. These activities are protected under Title VII and the ADEA.

82. As a result of her EEO complaints, Defendants retaliated against Plaintiff for participating in EEO counseling and/or for filing her EEO complaints by: issuing a Letter of Caution to Plaintiff that was without factual basis; revoking and/or denying Plaintiff training opportunities; subjecting Plaintiff to intimidation and harassment by her supervisor; unjustifiably giving Plaintiff a low performance rating; giving Plaintiff a fiscal year 2015 performance plan that contained new elements and standards that were arbitrary, subjective and improperly weighted; failing to promote her to GS-12; issuing Plaintiff a baseless Notice of Reprimand, claiming Blackstone had instructed Plaintiff to scan documents for four hours a day instead of three hours a day and claiming that Plaintiff had failed to timely file her time study materials,

despite the fact that others in the department were late and/or failed to submit their time study materials without receiving a similar Notice; Blackstone unreasonably interfering with the Oakridge selection process such that Plaintiff was not selected for any of the positions she applied for; issuing Plaintiff a baseless memo of Notice of Proposed Suspension; assigning Plaintiff unreasonable amounts of work with unreasonably short unnecessary deadlines; and ultimately by forcing Plaintiff to retire much earlier than planned. A reasonable employee would have found these actions to be materially adverse to their interests.

83. Defendants' actions were taken because of Plaintiff's protected activities, namely seeking EEO counseling and filing her EEO complaints. Each of the events described herein took place close in time to Plaintiff's protected EEO activity.

84. Defendants further unlawfully coerced, intimidated or threatened Plaintiff while on FMLA leave by threatening reprisal against Plaintiff, specifically by threatening to suspend Plaintiff while she was on FMLA leave. Such proposed suspension was without foundation, and in fact was based in part upon an alleged missed deadline that also occurred while Plaintiff was on leave.

85. Plaintiff has suffered significant damages as a direct result of Defendants' retaliatory actions toward her, including but not limited to: lost salary, lost contributions and annuity growth in the Federal Employees Retirement System Annuity (FERS), costs associated with taking early Social Security, lost Thrift Savings Plan (TSP) contributions from October 2015, costs associated with annual and sick leave used due to work-related medical issues, and pain and suffering caused by Blackstone's treatment of her, which resulted in a decline in Plaintiff's health.

86.     By taking the actions as described herein against Plaintiff, Blackstone acted with malice or with reckless disregard for Plaintiff's rights, causing Plaintiff to suffer significant injuries, not the least of which having to retire from a federal job early.  Defendants DOE and SWPA are liable for the actions of Blackstone because he was the Human Resources manager for SWPA and was acting within the scope of his employment.   Plaintiff is therefore entitled to recover punitive and/or liquidated damages from Defendants.

## **JURY DEMAND**

87.     Plaintiff hereby demands a jury trial.

**WHEREFORE,** Plaintiff prays that Judgment be entered in her favor, and against the Defendants for any and all damages Plaintiff may be justly entitle to receive, including but not limited to past and future wages and benefits at the GS-12 pay level (back pay and front pay), lost social security benefits, pain and suffering, compensatory damages, punitive and/or liquidated damages, and attorneys fees, all in amounts to be determined at trial; amendment of Plaintiff's Fiscal Year 2014 and 2015 Performance Appraisals to be changed to "Exceeds Expectations"; costs of court; pre and post judgment interest at the maximum rate allowed by law; and any and all further relief to which Plaintiff may be justly entitled to receive.

Dated May 27, 2016.

Respectfully submitted,

**CUTTER LAW FIRM, PLC**

/s/ Andrea Treiber Cutter
Andrea Treiber Cutter, OBA # 21444
320 S. Boston Avenue, Suite 1030
Tulsa, Oklahoma 74103
(918) 582-0055 (Phone)
(918) 584-1492 (Facsimile)
Email: acutter@cutterlawfirm.com

***ATTORNEYS FOR PLAINTIFF***